## Iriquois Life Insurance Co. v. Thomas.

(Decided November 18, 1919.)

### Appeal from Grayson Circuit Court.

1.  Principal and Agent—Agency—Termination of.—Where a contract with an insurance agent stipulated that if he should not write a specified amount of insurance during any month the agency might be "terminated at any time without notice," the failure of the agent to write the specified insurance did not in and of itself terminate his agency. It only gave the company the right to terminate it for this cause.

2.  Process—Service on Agent of Corporation—Effect of.—The service of a summons on an authorized agent of a corporation has the same legal effect as if the service had been made on the president or chief officer of the corporation.

3.  Process—Service on Agent of Corporation—Failure of Agent to Notify Corporation.—The failure of an authorized agent to notify the corporation of the service of summons upon him in a suit brought against the corporation does not entitle it to a new trial on the ground of accident, surprise, casualty or misfortune.

4.  New Trial—Judgment by Default—Grounds on Which May Be Set Aside.—A judgment by default will not be set aside during the term unless the grounds for a new trial come within the fair meaning of sections 340 or 518 of the Civil Code providing that a new trial may be granted on account of accident or surprise, casualty or misfortune.

BOYCE WATKINS for appellant.

C. S. NUNN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL—Affirming.

In this case there was a judgment by default against the appellant insurance company and it prosecutes this appeal from the ruling of the trial court in refusing to quash the summons, set aside the judgment and permit a tendered answer to be filed.

The facts shown by the record are these: In June, 1916, the company issued to A. W. Thomas in Grayson county, the place of his residence and the place where the contract was made, its policy for $1,000.00 payable at his death to his wife, Susa Thomas, the appellee. In October, 1916, it issued to him at the same place, another policy for a like amount also payable to his wife. Thomas died in November, 1916 and the company declining to pay either of the policies, a suit was brought in the Grayson circuit court on May 10, 1917, to recover the amount of them. A summons issued on the petition was executed, as shown by the amended return of the officer, on May 12, 1917, "by delivering a true copy thereof to J. C. Ramsey in this, Grayson county, wherein this action was brought and is pending, and said Ramsey was then the chief officer and agent found in said Grayson county."

On September 4, 1917, and on a day in the appearance term, the company failing to answer, judgment by default went against it for the amount claimed in the

petition, but on September 7, 1917, this judgment on motion of the attorney for the plaintiff was set aside in order that the sheriff who executed the summons might correct his return to conform to the true facts, and thereafter on the same day, the sheriff having amended his return, another judgment was entered.

On the following day, September 8, the company, by its attorney, filed the affidavit of its general agent, its vice-president and manager, and its general counsel, and moved the court to quash the return on the summons upon the ground that Ramsey was not its agent at the time the summons was executed on him and it had no notice of the judgment by default.

The affidavit of Collie, its general agent, set out that on April 19, 1916, he entered into a contract with J. C. Ramsey of Leitchfield, Grayson county, to act as its agent in soliciting insurance, in which contract there was a stipulation that, "It is understood that this contract is made and entered into on a basis of an average to $3,000 or more per month of paid for business and may be terminated at any time without notice to said Ramsey if this condition is not fulfilled." That Ramsey failed to write as much as $3,000.00 of insurance in October, 1916, and that by this failure, Ramsey, under the terms of the contract, ceased to be agent for the company and his agency on account of this fact was terminated in October, 1916. It further set out that Ramsey failed to notify him or the company that he had been served with summons and he did not discover that he had been until September 7, 1917.

The affidavit of Brown, the vice-president and general manager of the company, set out that Collie was the general agent for the company, authorized to employ local agents, and he did employ Ramsey, a resident of Grayson county, as agent; that Ramsey, for the reasons set out in the affidavit of Collie, was not the agent of the company on May 12, 1917, nor did he notify the company that he had been served with the summons.

Boyce Watkins, the general counsel, said in his affidavit that he first learned of the fact that the suit had been filed against the company on August 27, 1917, through information received from a lawyer friend.

It will be seen from these affidavits that the only ground upon which it is claimed that Ramsey was not the agent of the company when the summons was served

upon him is because he had failed to write in October, 1916, $3,000.00 of insurance, but it is nowhere said that Ramsey was notified then or at any time that his agency was terminated nor is it claimed that the company or its general manager or general agent did anything towards cancelling his agency. In fact, the contention that his agency was terminated in October, 1916, is rested solely on the ground that his failure to write $3,000.00 of insurance in that month in and of itself cancelled his agency, as there was no other limitation as to the life of the agency in the contract. We do not so understand the stipulation referred to in the contract with Ramsey. It provides that his agency might be terminated at any time without notice if he failed to write the amount of insurance stipulated, but there is no showing that his agency was terminated by any act of the company or the general agent, and this being so, we find that he was the agent of the company in May, 1917.

But aside from this and conclusively showing that the company did not consider the agency of Ramsey terminated in October, 1916, we find in the record that on September 3, 1917, Collie, the general agent, wrote Ramsey a letter, saying: "J. C. Ramsey, Agent. Dear Sir: I am just in receipt of instructions from this company that they have consolidated with 'Our Home Life Ins. Co.' of Jacksonville, Fla., and you are instructed not to write any new business until that company is licensed to do business in Kentucky, which I trust will be only a few days. In the meantime, dig up all your old prospects and let's get together for a long strong pull for big business until the close of the year, as we will be in a better position to do business than heretofore.

"Any business in the mill will be attended to promptly as soon as possible, and I will see that you get supplies as soon as they reach me."

It is also shown by the affidavit of Ramsey that he was on September 21, 1917, the day his affidavit was made, and had been continuously since April 19, 1916, the agent of the company and its chief officer and agent in Grayson county, in which county the contracts of insurance were written and delivered to Thomas, who was a resident of that county.

There can be no doubt from these uncontroverted facts appearing in the record that Ramsey was the agent and chief officer of the company in Grayson county at the time the summons was executed, and therefore no

error was committed in refusing to quash the return on the summons.

The only remaining question is—did the court commit error in overruling the motion made on September 8, to set aside the judgment by default and in refusing to permit a tendered answer to be filed? It will be observed that although a judgment by default was entered on September 4, it was set aside and the final judgment entered on September 7, and also noticed that Boyce Watkins, the general counsel, says he knew of the pendency of the suit on August 27, some ten days before the final judgment was entered, and hence in ample time to have been present, prepared to make defense at the September term of the Grayson circuit court when the case was called on the docket September 4; but it appears that no motion was made to quash the summons or set aside the judgment nor was any answer tendered until September 8.

As the decision of the case may be put on other sufficient grounds it is not necessary to consider whether the information of the suit received by its general counsel on August 27 was sufficient to give the company such notice of its pendency as to put on it the duty of being prepared to make its defense when the case was called for trial on September 4, or whether its failure in this respect was such laches that the trial court did not abuse a sound discretion in refusing to set aside the default judgment entered on September 7.

Passing this we are well satisfied that the failure of the authorized agent of the company on whom the summons was served to notify the general agent or general manager of the company of that fact was not, on the state of this record, sufficient reason for setting aside the default judgment entered on the service upon the agent.

In considering this question it is well to keep in mind the provisions of section 340 of the Civil Code authorizing the granting of new trials and the vacation of judgments for the causes therein enumerated, one of which is: "Accident or surprise which ordinary prudence could not have guarded against;" and the provisions of section 518, providing that, "The court in which a judgment has been rendered shall have power after the expiration of the term to vacate or modify it by granting a new trial . . . for unavoidable casualty or misfortune, preventing the party from appearing or defending."

It is true that it was said in Southern Insurance Co. v. Johnson, 140 Ky. 485, that:

"The power of the court to set aside a default judgment at the term at which it is rendered is inherent, and not dependent on sections of the Code regulating the granting of new trials. This power is not to be exercised capriciously or granted as a favor, or withheld as a rebuke for shortcoming in practice. It is exercised as a judicial discretion. It will not depend upon whether the party applying can show himself strictly entitled to the legal relief under Code provisions regulating the granting of new trials on ground of casualty and misfortune. But it will depend on whether the ends of justice will be furthered, and in a measure whether the party complaining has been guilty of laches such as to close the ear of the court to his application."

But nevertheless these sections of the Code furnish a guide by which the court must determine when a judgment either by default or after the trial should be vacated and we would be slow to rule that a court might go outside the spirit of these provisions and seek other grounds on which to vacate a judgment duly and regularly entered.

There must be an end of litigation, and when the orderly processes of the law have been observed in the rendition of judgments they ought not to be set aside unless on grounds that reasonably fall within the meaning of the provisions of the Code authorizing new trials. If this were not so neither courts, attorneys, nor litigants would ever know when the judgment was a final termination of the litigation. We are therefore not disposed to extend the grounds upon which a new trial may be granted, even when there has been a judgment by default, beyond the fair meaning of the Code provisions, nor do we think what was said in the Southern Insurance Company case goes beyond this when read in connection with the facts of that case. Com. v. Weissenger, Judge, 143 Ky. 368.

Looking now to the circumstances of this case let us see if they reasonably bring it within the fair meaning of the Code provisions authorizing the granting of a new trial for accident or surprise, casualty or misfortune.

The summons in this case was served on the authorized agent of the company and service on him had the same effect as if the summons had been served on the

president of the company, or on the defendant in person in an ordinary suit in which there was only one defendant.

There is no claim of fraud or showing that the agent was prevented by casualty or misfortune of any kind from notifying the company of the service of process. He simply failed to do it either through negligence or indifference. In other words the effect of his conduct was the same as if a defendant who had been served failed through negligence or indifference to give any attention to the service.

Innumerable suits are brought against corporations who must be served with process through their agents, and if the mere failure of the agent to notify the company, without the excuse of any accident casualty or misfortune that prevented it, was cause for setting aside judgments there would be no limitation on the grounds for granting a new trial in this class of cases; negligence or indifference would take the place of casualty or misfortune; and when the service was upon an agent the defendant in place of being held to the same diligence required of defendants who are personally served could secure a vacation of the judgment on grounds that would not be available to other defendants.

Plainly no distinction should be made between service upon an authorized agent and service upon the real defendant nor should a new trial be granted in one case if it would not be granted in the other.

Therefore, treating the matter as if the service had been upon the president or chief officer of the company it seems clear that under the facts of this case it can not be said that the trial court abused its discretion in refusing to set aside the judgment.

We had before us in Reese Lumber Co. v. Licking Coal & Lumber Co., 156 Ky. 723, a question like the one here presented. In that case it appears from the opinion that in the suit of the Licking Coal and Lumber Company against the Reese Lumber Company summons was served upon William Cook, the agent of the latter, but who failed to notify it of the service or the pendency of the suit. Holding that this conduct on the part of Cook was not sufficient ground for vacating the judgment by default that went against it on the service of this summons the court said: "It would merely show that Cook was negligent in failing to inform appellant of the service of the summons upon him, and this being so, ap-

pellant cannot rely upon the negligence of its agent as a ground for vacating the judgment rendered against it after being properly summoned in the action. In such a state of case the negligence of the agent is imputed to the principal and is, therefore, the negligence of the latter. In other words, the absence of actual knowledge by appellant of the service of the summons upon its agent or of the pendency of the action, though it may have prevented it from making defense to the action, was not such an unavoidable casualty or misfortune in the meaning of subsection 7, section 518, Civil Code, as entitles it to a vacation of the judgment or a new trial. . . . .

"No court has ever granted the unsuccessful litigant a new trial upon the ground that the negligence of himself or his agent prevented him from making his defense to the action."

Another case in which a question like this came before us was Callahan Construction Co. v. Williams, 160 Ky. 814. In that case there was a judgment by default and during the same term the defendant moved to set aside the judgment upon the ground of accident or surprise which ordinary prudence could not have guarded against. There, as here, the service was upon an agent who did not notify the corporation that the summons had been served upon him or that the action was pending; the new trial was also asked upon the ground that its attorney advised it that service upon the agent was not sufficient, but the court held that neither of these grounds was sufficient to justify the vacation of the judgment.

To the same effect is Crowder v. Stine, 172 Ky. 703.

Wherefore the judgment is affirmed.